IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| REGINA HUTCHINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:18-cv-389-ALB |
| | ) |
| AUBURN UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Auburn University's ("Defendant") partial motion to dismiss the charges brought against it by Regina Hutchinson ("Plaintiff"). *See* Doc. 36. Plaintiff's second amended complaint contains three counts. *See* Doc. 35. Plaintiff alleges that Auburn University discriminated against her based on her race in violation of Title VII (Count 1), subjected her to a hostile work environment in violation of Title VII (Count 2), and retaliated against her for her EEOC complaint against it in violation of Title VII (Count 3). Defendant has moved to dismiss the second and third counts. Upon consideration, Defendant's motion is due to be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Plaintiff filed her initial complaint on April 5, 2018. In response to a briefing order on Defendant's motion to dismiss, Plaintiff asked for, and was granted, leave to amend her complaint and did so on May 25. After reviewing the complaint, the Court held a hearing on January 31, 2020 to ask Plaintiff to clarify various matters therein. After this hearing, Plaintiff filed a second amended complaint on February 19, 2020. Defendant filed a partial motion to dismiss.

The following facts are taken from the second amended complaint and, for the purpose of this analysis, are taken as true.

Plaintiff is an African-American female and has been employed at Auburn University in a clerical position for the last 27 years. Plaintiff received excellent performance appraisals until Chance Corbett, a Caucasian male, became her supervisor in May of 2016. Immediately thereafter, Plaintiff began to feel that she was being treated less favorably than her Caucasian co-workers. Plaintiff's factual allegations are universally related to Chance Corbett. Plaintiff has alleged that Corbett did the following:

- o He appeared more comfortable working with Caucasians and treated Hutchinson rudely as compared to these Caucasians.

- o He told Hutchinson that he could not work with someone he could not trust.

- He did not punish Michael Adams for saying that Hutchinson's former supervisor, an African-American, was responsible for an audit at Auburn.

- He gave Hutchinson administrative leave and a written reprimand.

- He gave preferential treatment to Lyn Littleton, a Caucasian female, over Hutchinson by scrutinizing Hutchinson's work and time sheets and failing to scrutinize Littleton's work or the time she spent at lunch.

- He protected a Caucasian employee, Catherine Stephens, who had been caught sleeping on the job by her supervisor, by keeping her write-up in his office and failing to send it to human resources.[1]

- He gave Stephens a larger pay raise than Hutchinson despite Stephens' lower performance evaluation numbers.

- He boasted at a staff meeting that he carried a loaded pistol in an ankle-holster for people that might upset him.

- He assigned Hutchinson to sit at the front desk when the front desk clerk was absent, even though Littleton's desk was closer to the front desk.

- He issued Hutchinson a Corrective Action Report.

---

[1] Even though she never found herself in a similarly sleepy situation, Plaintiff has cited this incident to show that Corbett showed mercy and favor to a Caucasian employee while he continued to scrutinize her.

- o He gave Hutchinson busy work that she had already completed and scrutinized her more rigorously after she filed a complaint with the EEOC.

- o He removed Hutchinson's Human Resources Liaison duties from her job responsibilities and reassigned them to a Caucasian female in order to ensure that she would not be reclassified into a higher pay category.

- o He requested job studies on all Security Service Representative positions and TES employee positions, which led to those individuals receiving pay raises, but did not request a job study for Hutchinson's position.

Hutchinson's EEOC charges painted a slightly different picture. Her first EEOC charge, filed in July 2017, alleged that, in addition to her race, Corbett was discriminating against Hutchinson due to a heart disease related to stress that he himself had caused. She also alleged that Stephens and Littleton received preferential treatment, that Corbett said he wouldn't work with someone he couldn't trust, that Corbett was trying to provoke her, and that Corbett generally favored younger people, white people, and his own friends. *See* Doc. 41-1 at 9-10. In her supplemental affidavit, filed with the EEOC on October 18, 2017, Hutchinson recounted retaliatory actions but again painted a different picture than that found in her complaint. In the supplement, Hutchinson alleges only that she must tell Corbett

4

when she needs to leave for an appointment, that she is forced to sit at the front desk when the employee ordinarily assigned to that role is absent, and that Corbett does not let her work overtime.

The operative complaint brings three counts. First, the complaint alleges that Corbett discriminated against Plaintiff because of her race by treating her unfavorably compared to white coworkers in ways that affected her eligibility for promotions and raises. Second, the complaint alleges that Corbett created a racially hostile work environment. Third, the complaint alleges that Corbett retaliated against Plaintiff for filing an EEOC complaint.

## **STANDARD**

When considering a motion to dismiss, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). There are two questions a court must answer before dismissing a complaint. First, the court must ask whether there are allegations that are no more than conclusions. If there are, they are discarded. Second, the court must ask whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

As recounted above, this case has been pending for a long time at the motion to dismiss stage. Some of that delay is because Plaintiff's first two complaints did not clearly identify the adverse employment actions about which she was complaining.[2] Plaintiff's most recent amended complaint was enough to convince Defendant to concede that Count One states a plausible claim for racial discrimination in promotion/pay. But Defendant continues to ask this Court to dismiss Counts Two (hostile work environment) and Three (retaliation).

**A. Count 2 – Plaintiff has failed to allege a severe or pervasive hostile work environment.**

Defendant is correct that Plaintiff's hostile work environment allegations fail to state a claim upon which relief may be granted. To state a plausible hostile work environment claim, Plaintiff must allege "(1) that [she] belong[s] to a protected group; (2) that [she has] been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee[], such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

---

[2] Some of the delay is also attributable to a judicial emergency in the Middle District of Alabama. After it had moved through three previous judges, including a magistrate judge to whom it had been referred for a report and recommendation, the undersigned received this case in October of 2019.

6

environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Buckhanon v. Huff & Assocs. Const. Co.*, 506 F. Supp. 2d 958, 964 (M.D. Ala. 2007) (internal quotations and citations omitted).

The operative complaint does not include allegations of objectively "severe or pervasive" harassment that would alter the terms and conditions of Plaintiff's employment.[3] Plaintiff feels subjectively that she was mistreated by Corbett and that having Corbett as her supervisor affected her job. On that basis, she asked for and received a transfer. But the test for a hostile work environment claim is objective, not subjective, and the bar is quite high. *See Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (holding that calling someone a "slut," "whore," "bitch," and "hooker" over the course of three years was not sufficiently severe or pervasive). A court must evaluate the totality of the circumstances in assessing how a reasonable objective person would perceive the alleged conduct, including:

> (1) the frequency of the conduct; (2) its severity; (3) whether it was physically threatening or humiliating; and (4) whether it unreasonably interfered with [the plaintiff's] work performance. No single factor is determinative, and either severity or pervasiveness can satisfy the element, if sufficient. However, teasing, offhand comments, and

---

[3] Defendant argues that Plaintiff's claim is also barred because the charges in her second amended complaint are different from what she presented to the EEOC. Because the Court concludes that her claim so clearly fails on the merits, the Court does not address this argument.

7

isolated incidents do not constitute discriminatory changes in the terms, conditions, or privileges of employment.  To the contrary, the workplace must be permeated with discriminatory intimidation, ridicule, and insult.

*Greywoode v. Sci. Applications Int'l Corp.*, 943 F. Supp. 2d 1355, 1373 (M.D. Ala. 2013) (internal quotations and citations omitted).

Plaintiff's allegations do not meet this objective test. Here, Plaintiff complains about the actions of a single supervisor for whom she worked for approximately 18 months. She alleges that Corbett seemed more comfortable working with Caucasians than he did with African-Americans, but Plaintiff does not identify any racially-charged comments or biased statements.[4]  Plaintiff alleges that Corbett told Plaintiff that he did not want to work with someone he did not trust, but that is both a racially neutral and a reasonable sentiment. Plaintiff also alleges that Corbett scrutinized her time sheets, made her sit at the front desk, and prevented her from receiving credit for overtime work. But Congress did not enact the civil rights laws to regulate where an employee sits or how a supervisor reviews an employee's time sheets.  These

---

[4] *See Isaac v. School Bd. Of Miami-Dade Cnty., Fla.*, 2002 WL 31086118 (S.D. Fla. Sep. 3, 2002) (holding supervisor's alleged comments, including telling Hispanic social worker not to help plan African-American coworker's party and to "let the black ones do it," and comment that supervisor did not want to sit next to "that black woman" insufficiently severe or pervasive); *Barrow v. Ga. Pacific Corp.*, 144 Fed.Appx. 54, 57 (11th Cir. 2005) (holding conduct insufficiently commonplace, overt and denigrating to be considered severe and pervasive where, over fourteen years, a workplace included displays of Confederate flag, the letters "KKK" on walls and objects, and a noose in coworker's locker, and evidence that the plaintiff's coworkers and supervisors called him a "nigger" multiple times, repeatedly called him "boy," threatened to kick plaintiff's "black ass," threatened to "cut" him for looking at white woman, and called him "dumb ass").

minor slights were neither physically threatening nor humiliating, and they do not constitute severe or pervasive harassment.

Plaintiff's most substantial allegations are not about Corbett's alleged mistreatment of her, but his alleged favorable treatment of her colleagues. Plaintiff alleges that Corbett did not chastise Littleton when she took long lunch breaks or ask Littleton to fill in at the front desk. Similarly, Plaintiff alleges that, although Stephens was caught sleeping on the job and scored lower on her performance review, she was never disciplined and was given a bigger raise than Plaintiff. These allegations of differential treatment are enough to move forward on Count One for racial discrimination, as Defendant has conceded. But differential treatment in relatively minor office matters does not create an objectively hostile work environment. *E.g. Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807 (11th Cir. 2012) (holding that dozens of derogatory comments over an eleven-month period is insufficiently severe and pervasive); *cf. Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (holding that the usage of three to four ethnic slurs on a daily basis over the period of one month was sufficiently severe and pervasive).

Finally, Plaintiff has alleged that Corbett bragged at a staff meeting about a pistol that he kept in an ankle-holster and said he might have to use it if someone upset him. Plaintiff's counsel emphasized this statement at the hearing on the previous version of the complaint and does so again in the briefing. But the Court

cannot see how this statement created a severe or pervasive hostile work environment based on race. It was not directed at Plaintiff, it had nothing to do with race, and it happened (apparently) one time. *See Evans v. Pemco Aeroplex, Inc.*, 1998 WL 1048470, at *13 (N.D. Ala. Feb. 23, 1998) (holding that the plaintiff's allegations were insufficiently severe where an employee was shown a picture of a noose, saw the letters "KKK" displayed at employer's facility, and saw applications with the words "Nigger Application" written on them, because the plaintiff had neglected to give a specific time frame or show how they had affected his work performance). Further, as Defendant points out, Corbett was the head of Auburn's law enforcement division; he would be expected to carry a weapon. *See* Doc. 36 at 10. Plaintiff has alleged no set of facts that could plausibly support a hostile work environment claim, and the count will be dismissed accordingly.

### B. Count 3 – Plaintiff has alleged a plausible retaliation claim.

Plaintiff alleges that, after she filed an EEOC complaint, Corbett began to retaliate against her. Plaintiff alleges she was forced to endure increased scrutiny and busywork, as well as having various duties removed. Defendant responds that the Court should not entertain Plaintiff's retaliation claim because it is procedurally barred. If the Court does entertain the claim, Defendant argues it should be dismissed because there is no reasonable inference that the acts alleged were caused

by Plaintiff's protected activity. The Court concludes that Plaintiff has alleged a plausible claim of retaliation and that this part of the motion should be denied.

1. <u>Plaintiff has made an adequate showing that she filed a supplemental affidavit to raise the retaliation claim.</u>

As an initial matter, Plaintiff has made an adequate showing that she exhausted her administrative remedies. Defendant cites precedent from this Court for the proposition that Plaintiff should not be permitted to argue her retaliation claim because, according to her official EEOC file, she never submitted a supplemental affidavit with allegations of retaliatory action and has therefore not exhausted her administrative remedies. *See Ketring v. Auburn Univ.*, 2019 WL 3825333, at *2 (M.D. Ala. Aug. 15, 2019). Plaintiff responds that she did file such a supplement with the EEOC and has attached a copy. *See* Doc. 41 at 7.

The Court cannot resolve this issue of fact at the motion-to-dismiss stage. Defendant cites *Carney v. City of Dothan*, 158 F. Supp. 3d 1263, 1276 (M.D. Ala. 2016), which in turn cites federal regulations, for the proposition that a charge is considered "filed" only when it has been received by the EEOC. But *Carney* was decided at summary judgment based on undisputed evidence that the EEOC did not receive the charge. Defendant also cites *Ketring* for the proposition that a district court can take judicial notice of the EEOC file and its contents at the motion to

dismiss stage. However, in *Ketring,* the court considered that "plaintiff has given no reason to question the file's completeness" as one of the reasons why it proceeded to take judicial notice of the file.

At this point in the litigation, the Court concludes that Plaintiff has plausibly alleged that she exhausted administrative remedies. Both Plaintiff and her attorney have alleged that the supplemental charge was mailed. Although Defendant relies on the EEOC's certified file for its contention that the supplemental charge was not filed with the EEOC, the Court is obligated at this stage of the litigation to draw all reasonable inferences in favor of the Plaintiff, including that she filed the supplemental EEOC charge as she alleges. Defendant can revisit this issue at summary judgment.

2. Plaintiff has alleged a plausible retaliation claim.

Plaintiff's retaliation claim also survives on the merits. "To establish a prima facie case of retaliation under Title VII, 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). There is no dispute that Plaintiff has successfully alleged the first element of her retaliation claim: she engaged in protected activity by filing an EEOC charge in July of 2017. There is

also no dispute that she has successfully alleged the second element: adverse employment actions were taken against her. Specifically, her supervisory duties were removed in November 2017 and her Human Resources Liaison duties were removed in June 2018. *See* Doc. 42 at 4.

Defendant argues that Plaintiff's retaliation claim falters at the third element—causation—because these adverse employment actions are not in close temporal proximity to Plaintiff's EEOC charge. But the Court disagrees. Although, as Defendant argues, a six-month to one-year temporal proximity between an EEOC complaint and an adverse employment action is not enough *by itself* to establish causation in this Circuit, it would be error for the Court to dismiss Plaintiff's retaliation claim on this ground. The lack of close temporal proximity defeats a retaliation claim only "in the absence of other evidence tending to show causation." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, in addition to temporal proximity, Plaintiff has alleged other facts that could be considered circumstantial evidence of causation, such as disparate treatment, mandated busy work, limited overtime, and a potential surveillance device that she found in her office. *See Boyland v. Corr. Corp. of Am.*, 390 F. App'x 973, 974–75 (11th Cir. 2010) (holding that "[i]n the absence of close temporal proximity between the protected activity and the employer's adverse action, a plaintiff may be able to establish causation where intervening retaliatory acts commenced shortly after the

plaintiff engaged in a protected activity"); *Woldeab v. DeKalb Cty. Sch. Dist.*, 2018 WL 10510815, at *7 (N.D. Ga. Nov. 6, 2018) (holding that "there are instances in which a consistent and sustained pattern of retaliation, which begins immediately after protected activity, will create an inference of causation between the protected activity and the entirety of the retaliatory actions"); *Richie v. Mitchell*, 2015 WL 3616076, at *6 (N.D. Ala. June 9, 2015) (denying motion to dismiss because, although the temporal proximity may be too tenuous to state a retaliation claim, "some other facts alleged by plaintiff ... could also be considered as other evidence of retaliation"); *El-Saba v. Univ. of S. Ala.*, 2015 WL 5849747, at *15 (S.D. Ala. Sept. 22, 2015) (recommending denial of a motion to dismiss where there was a two-year gap between the protected activity and the adverse employment action because discovery may "unearth evidence of retaliation such that at summary judgment or trial, the plaintiff will not have to rely heavily on the temporal proximity between protected conduct and adverse actions to prove her case"), report and recommendation adopted as modified, 2015 WL 5882977 (S.D. Ala. Oct. 7, 2015). Whether Plaintiff can develop this other evidence of causation is a question for summary judgment or trial.

## CONCLUSION

For the foregoing reasons, Defendant's partial motion to dismiss (Doc. 36) is due to be and is **GRANTED IN PART AND DENIED IN PART**.

Count Two is **DISMISSED WITH PREJUDICE**.

The case will proceed on Count One and Count Three.

**DONE** and **ORDERED** this 17th day of April 2020.

                                                  /s/ Andrew L. Brasher
                                                  ANDREW L. BRASHER
                                                  UNITED STATES DISTRICT JUDGE